HAMITER, Justice.
 

 In this cause, involving two claims for Workmen’s Compensation growing out of the death of one Joe Johnson, we issued the writ of certiorari to the Court of Appeal, First Circuit, in order that its decision might be reviewed.
 

 From the record we find that on June 17, 1948, the said Joe Johnson was killed while engaged in the course and scope of his employment as a common laborer with T. L. James & Company, Inc., his wages (regular plus averaged overtime) then and for several months previously having been $49.57 per week.
 

 Members of his household when the accident and death occurred were Mary Patin, reputedly his wife but to whom he was not married, and Raymond Patin, Mary’s minor-nephew who was born of the marriage of' Horace Patin and Angie Lee Williams. Surviving decedent also, but not living in-his home, was his mother, Sophie Braud Johnson, towards whose support he had' made some contributions.
 

 Horace Patin, as natural tutor, instituted the suit for and on behalf of his minor son, Raymond Patin, demanding compensation of $20 per week for a period not. exceeding 300 weeks from the mentioned, employer and its compensation insurer, the-National Surety Corporation of New York. In due course Sophie Braud Johnson intervened, claiming compensation as decedent’s dependent mother.
 

 The district court, after a trial of the-merits, rejected the demands of plaintiff, Horace Patin, made on behalf of the minor,. Raymond Patin. However, it awarded tointervenor as a partially dependent mother compensation of $3 per week for a period, not exceeding. 300 weeks, this minimum -rate' which the statute stipulates having "been decided upon because of the absence-of proof of definite or regular amounts, contributed to her by decedent.
 

 The Court of Appeal, following its consideration of the case, affirmed the judgment insofar as it granted compensation tointervenor. But, contrary to the holding of' the trial court, it condemned defendants to
 
 *954
 
 pay also to plaintiff, as tutor for the minor Raymond Patin, compensation in the sum of $3 per week for a period not exceeding 300 weeks. See 42 So.2d 304 and 43 So.2d 58.
 

 Plaintiff and the defendants applied for the writ of certiorari, and on the showings made in both applications we issued it. Intervenor sought no review of the Court of Appeal’s decision.
 

 Defendants, in this court, do not complain of the award made to intervenor as decedent’s partially dependent mother. Rather, they rely on that award in resisting the demand of plaintiff. They urge that the Court of Appeal erred in allowing compensation in behalf of Raymond Patin, because 1. he was not a child of decedent nor a member of the latter’s family and, alternatively, 2. (quoting from the brief of defense counsel) "the claim of a dependent parent of a deceased employee who is entitled to compensation, forecloses or precludes the claim of a member of the deceased employee’s family under the Louisiana Workmen’s Compensation Act (Act 20 of the Legislature for the State of Louisiana, for the year 1914, as amended [LSA-RS 23:1021 et seq.]).”
 

 The position of plaintiff, on the other hand, is merely that Raymond Patin was a wholly dependent member of the deceased employee’s family, entitled as such to the maximum compensation prescribed by the statute as it existed when the death occurred (June 17, 1948), or $20 per week for a period not exceeding 300 weeks.
 

 It is apparent, therefore, that the primary questions to be determined here are whether Raymond Patin is entitled to compensation and, if so, the amount thereof.
 

 Admittedly such minor was not an offspring of the deceased employee. He was born of the marriage- of Angie Lee Williams and Horace Patin, á brother of decedent’s concubine, Mary Patin. The evidence preponderately shows, however, that at the time of the death of Joe Johnson and continuously for almost twelve years prior thereto he lived in the household maintained by such decedent and Mary Patin as their adoptive child, he, at a tender age, having been turned over to them by his mother for rearing. It is true that during that period Horace Patin occasionally gave trivial sums to his son on irregular visits to him and, some five years preceding Joe Johnson’s death, caused to be made in his favor a United States Army allotment of $25 per month which endured for only five and one-half months. Also, Mary Patin at times performed odd jobs such as sewing and washing, the small remuneration from which went to care for household expenses and benefitted the minor indirectly and slightly. But his food, clothing and other required necessities of life were supplied principally, almost entirely, from the earnings of the deceased employee; and, as a result, it must be concluded that he was wholly dependent on de
 
 *956
 
 cedent for support at the time of the latter’s death within the contemplation of the statute. Furthermore, by virtue of that dependency and his living as a member of the family of decedent, although unrelated by blood, the minor is entitled to receive compensation as a total dependent unless, as ■counsel for defendants contend under their second defense, the proved and recognized ■claim of decedent’s partially dependent mother forecloses or precludes such minor’s rights thereto. See Archibald et al. v. Employers’ Liability Assurance Corporation, Ltd., et al., 202 La. 89, 11 So.2d 492 and Thompson v. Vestal Lumber & Manufacturing Company, 208 La. 83, 22 So.2d 842.
 

 In offering this second defense •counsel direct attention to Section 8, paragraph 2, sub-section (E), Act 20 of 1914, as last amended by Act 242 of 1928, LSA-RS .23:1232, the provisions of which are:
 

 “(E) Payment to such dependents shall be computed and divided among them on the following basis.
 

 “1. If the widow or widower alone, thirty-two and one-half per centum of wages.
 

 “2.
 
 If widow or widower and one child, ■forty-six and one-quarter per centum of wages.
 

 “3. If widow or widower and two or ■more children, sixty-five per centum of wages.
 

 “4. If one child alone, thirty-two and one-half per centum of wages of deceased.
 

 “5. If two children, forty-six and one-quarter per centum of wages.
 

 “6. If three or more children, sixty-five per centum of wages.
 

 “7. If there be neither widow, widower, nor child, then to the father or mother, thirty-two and one-half per centum of wages of the deceased. If there be both father and mother, sixty-five per centum of wages.
 

 “8. If there be neither widow, widower nor child, nor dependent parent entitled to compensation, then to one brother or sister, thirty-two and one-half per centum of wages of deceased, with eleven per centum additional for each brother or sister in excess of one. If other dependents than those enumerated, thirty-two and one-half per. centum of wages for one and eleven per centum additional for each such dependent in excess of one, subject to a maximum of sixty-five per centum of wages for all, regardless of the number of dependents.”
 

 Then counsel argue that such provisions grant a right of action in behalf .of members of the family of the deceased employee who are unrelated by blood to him, designated in the statute as “other dependents”, if there exists neither widow, widower nor child nor dependent parent, entitled to compensation; and that the minor Raymond Patin, who is within the group known as “other dependents”, has no such right in
 
 *958
 
 view of the preferred valid claim of decedent’s partially dependent mother. They say, in other words, that in the above quoted schedule of payments to dependents there are established classes according to rank whereby the member or members of a superior class would preclude the rights of members of an inferior class; and that thereunder the existence of a partially dependent parent, entitled to only a small portion of the stipulated allowable compensation, prevents a reception of the statutory benefits by brothers, sisters and “other dependents”, who are in succeeding classes, even though the latter are totally dependent on the decedent.
 

 By considering sub-section (E) alone and interpreting it literally the argument of defense counsel would seem to be sound. But in determining the instant claims the statute is to be given a liberal construction and its intent and purpose ascertained. To that end the numerous other pertinent provisions touching the question of dependency must also be taken into consideration. These other provisions are likewise contained in the mentioned paragraph 2 of Section 8, LSA-RS 23:1231, 23:1251 to 23:1253, and are as follows:
 

 “2. For injury causing death within one year after the accident there shall be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of three hundred weeks. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death; the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears-to the earnings of the deceased at the time of the accident.
 

 - “(A) The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee.
 

 “(B) A wife upon a husband with whom she is living at the time of his accident or death.
 

 “(C) A husband, mentally or physically incapacitated from wage earning, upon a wife with whom he was living at the time-of her accident or death.
 

 “(D) A child or children under the age of eighteen years (or over said age, if physically or mentally incapacitated from earning) upon the parent with whom he is, or they are, living at the time of the injury of such parent. In case there are both surviving wife and child or children, or surviving husband and child or children entitled to compensation, the compensation due under this act shall be paid entirely to-the surviving husband or surviving wife
 
 *960
 
 for
 
 the common
 
 benefit of such wife or husband and the child or children. In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; and in such other cases if there are a sufficient number of persons wholly dependent to take up the maximum compensation under this act, the death benefit shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof; if there is no one wholly dependent and more than one person partially dependent, so much of the death benefit as each is entitled to under this act shall be divided among them according to the relative extent of their dependency. No person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child.”
 

 When all of- the above quoted statutory provisions are considered together it appears that the classes according to rank established in and by the schedule of payments of sub-section (E) (conceding for the sake of argument that it so establishes and ranks classes) pertain to and include only persons who are totally dependent on the deceased employee and are without application to those partially dependent. Thus, the first sentence of paragraph 2 of Section 8 stipulates for the payment to persons wholly dependent on the decedent the weekly sum “as hereinafter provided”, this referring obviously to the percentage of wages specifically set out in such schedule of sub-section (E). The following or second sentence of such paragraph and section, however, relates excjusively to payment of weekly compensation to those only partially dependent and provides a definite formula for the computation thereof, it being on a ratio basis according to the decedent’s earnings and contributions and to the weekly benefits received by those wholly dependent. Then in sub-section (D) of paragraph 2 of Section 8 if is provided that in cases other than the widow, widower or child, those who are only partially dependent shall receive no benefits where wholly dependent persons take up the maximum compensation; and if no one is wholly dependent and more than one person is partially dependent the compensation shall be divided among the partially dependent persons according to the relative extent of their dependency. If the schedule contained in sub-section (E) (assuming that it establishes classes and ranks them) contemplates both total and partial dependency why the necessity of providing the above mentioned separate formula for computing benefits to partial dependents ? Why, under the provisions of sub-section (D), would a partial dependent person of a superior class (a mother) take nothing when there exist wholly dependents in. an inferior class
 
 *962
 
 (brothers and sisters) who receive the maximum compensation; and why would partial dependents in different classes, where there is no one wholly dependent, divide the benefits among themselves according to the relative extent of their dependency? These questions seem to answer themselves.
 

 To us it appears that the statute purposes to distinguish between those persons wholly dependent and those partially dependent, compensating the former according to the schedule contained in sub-section (E) and providing benefits for the latter on the basis of the discussed formula and only after those wholly dependent have received their specified portions.
 

 That this is the correct interpretation to be given the above quoted provisions taken together is indicated by the history of their development. The original statute, or Act 20 of 1914, contained provisions similar in most respects to those of the present statute, they having distinguished between total and partial dependency, provided a specific formula for computing payments to partially dependent persons, and preferred total dependents to partial dependents. But the schedule therein, which set forth definite percentages of wages to be paid and named the different classes of dependents, did not seek to rank one class over another. All of which tends to show that such schedule of the 1914 statute applied exclusively to those wholly dependent.
 

 Act 243 of 1916 made radical changes in the original statute. It set up a schedule of payments in and by which dependent persons apparently were not only classified but also the several classes described were ranked. It is significant, however, that such statute at the same time deleted all of those provisions of the former Act which (as to parents, brothers and sisters, and “other members of the family”) related separately to partial dependents as distinguished from total dependents, the effect of which was that partial dependents were to be awarded the scheduled benefits on the same basis as the wholly dependent persons. In this connection it provided that the persons of the several groups were entitled to the stipulated payments “if dependent on the deceased
 
 to any extent
 
 for support at the time of the accident”. Thus, the 1916 statute did not discriminate between partially and wholly dependents for, as noted, the same compensation was paid to all in each class whether partially or wholly dependent. Clearly the schedule of that statute, therefore, applied to both partial and total dependency. (Italics ours.)
 

 The next change important to this consideration occurred in 1926, by Act 85, the provisions of which were substantially the same as those now in force and effect. Although that statute apparently carried the schedule of payments of the 1916 act, the Legislature therein returned to and adopted practically verbatim those provisions of the 1914 statute which distinguished between partial and total dependency. It recited, as originally, that the compensation
 
 *964
 
 to be paid wholly dependent persons was a weekly sum “as hereinafter provided”, referring undoubtedly to the schedule that followed; it provided for ' and prescribed the above discussed formula to be used in computing payments for those only partially dependent; and it contained the original provisions relating to the sharing by partial dependents according to whether or not there survived total dependents.
 

 It being true then that the schedule of payments contained in sub-section (E), paragraph 2 of Section 8 of the present statute applies only to those persons wholly dependent, and conceding for the sake of argument that it ranks the several classes therein provided for, we must conclude that in the instant case the claim of the mother of the deceased employee does not preclude the right of Raymond Patin, the'dependent “member of the family”, to recover compensation; for such mother admittedly was only partially dependent, entitled to recover no more than the minimum of $3 per week because of the lack of proof showing definite and regular contributions to her.
 

 And since he was wholly dependent, as shown, the said Raymond Patin should recover under the schedule a weekly sum of thirty-two and one-half per cent of decedent’s wages ($49.57) at the time of his death for a period not exceeding 300 weeks, which weekly sum, when computed, is $16.11.
 

 These weekly payments will in no manner affect the compensation of $3 per week for the dependent mother inasmuch as the total of both does not exceed the maximum of $20 per week which the statute, in effect at the ■ time of the employee’s death, authorized.
 

 In presenting their arguments counsel for the respective litigants cited a number of decisions in the jurisprudence of this state, all of which we have carefully considered. It is needless to discuss them, however, for the reason that none presented a factual situation identical with the one here or provided a holding that conflicts with our above announced conclusion.
 

 For the reasons assigned the judgment of the Court of Appeal is amended by increasing the weekly compensation award made in favor of Horace Patin, as tutor of the minor Raymond Patin, from $3 to $16.-11, and, as amended, such judgment is affirmed. Defendants shall pay all costs.
 

 LE BLANC, J., recused.
 

 HAWTHORNE and McCALEB, JJ., dissent from denial of motion for rehearing.